**HUNTER PYLE, SBN 191125**
**TANYA P. TAMBLING, SBN 262979**
HUNTER PYLE LAW
428 Thirteenth Street, 11th Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
hunter@hunterpylelaw.com, ttambling@hunterpylelaw.com

Attorneys for Plaintiff
JASON LOPEZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LOPEZ,<br><br>              Plaintiff,<br><br>    vs.<br><br>WINCO HOLDINGS, INC., and WINCO FOODS, LLC,<br><br>         Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**1. DISABILITY DISCRIMINATION (FEHA);**<br>**2. FAILURE TO PROVIDE REASONABLE ACCOMMODATION (FEHA);**<br>**3. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS (FEHA);**<br>**4. RETALIATION (FEHA);**<br>**5. FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION (FEHA); and**<br>**6. FMLA INTERFERENCE.**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   **INTRODUCTION**

1.      Plaintiff JASON LOPEZ (Plaintiff) worked for Defendants WINCO HOLDINGS, INC. and WINCO FOODS, LLC (collectively referred to as "WINCO") for 24 years.  He began his career as a Cart Clerk and worked his way up the ranks to become a Store Manager.  Plaintiff managed three different WINCO stores in Northern California and was lauded for his good performance.

2.      Plaintiff began to suffer from depression around the end of 2017.  In December 2018, Plaintiff requested an accommodation for the first time in his tenure with WINCO.  WINCO failed to engage in the interactive process in good faith and then transferred him to one of the worst stores in Northern California in January 2019.

3.      After WINCO transferred Plaintiff, WINCO warned Plaintiff about his performance, and suspended him.

4.      By May 2019, Plaintiff's depression worsened and he asked WINCO for Family Medical Leave Act (FMLA) paperwork.  WINCO terminated Plaintiff less than two weeks later.

5.      Plaintiff brings this action against WINCO alleging the following claims for violations of the Fair Employment and Housing Act (FEHA): 1) Disability Discrimination; 2) Failure to Provide Reasonable Accommodation; 3) Failure to Engage in the Interactive Process; 4) Retaliation; and 5) Failure to Prevent Discrimination, Harassment and Retaliation.  Plaintiff also brings a sixth claim for FMLA Interference.

## II.   **PARTIES**

6.      Plaintiff is currently a resident of Oakley, California in the County of Contra Costa. WINCO employed Plaintiff as a Store Manager at its Pittsburg and Vacaville facilities, which are located in Contra Costa County and Solano County, respectively.

7.      Upon information and belief, WINCO HOLDINGS, INC. operates as a holding company. WINCO HOLDINGS, INC., through its subsidiaries, retails bulk food, meat, deli, seafood, and bakery products.  WINCO HOLDINGS, INC.'s headquarters is in Boise, Idaho.

8.      Upon information and belief, WINCO FOODS, LLC is a subsidiary of WINCO HOLDINGS, INC. based in Boise, Idaho.  It has warehouse-style grocery stores and is registered to do business in the State of California.

### III.      JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. section 1332. In addition, this Court has supplemental jurisdiction under 28 U.S.C. section 1367 over Plaintiff's state law FEHA claims, because those claims derive from a common nucleus of operative fact.

10.      This Court has also has federal question jurisdiction over this action pursuant to 28 U.S.C. section 1331.

11.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202.

12.      Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. section 1391(b)(1) because WINCO "resides" in this district.  See 28 U.S.C. § 1391(c)(2).  Specifically, the United States District Court for the Northern District of California has personal jurisdiction over WINCO because WINCO is registered with the California Secretary of State to do business and is doing business in California, and in this district.

13.      Venue is also proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims in this case occurred in this district.  Specifically, WINCO violated the FEHA in late 2018 and early 2019 by taking illegal actions against Plaintiff in Pittsburg, California.

14.      The amount in controversy exceeds $75,000.

### Intradistrict Assignment

15.      Intradistrict assignment to the Oakland or San Francisco Division is proper pursuant to Local Rule 3-2(d) because a substantial part of the events giving rise to this action occurred in Contra Costa County.

## IV.    EXHAUSTION OF ADMINSTRATIVE REMEDIES

16.    Plaintiff has exhausted the applicable remedies available to him under the FEHA by timely filing a complaint regarding the matters described below with the DFEH on June 20, 2019.  The DFEH issued a Notice of Case Closure and Right to Sue letter to Plaintiff that same day.

## V.    STATEMENT OF THE CASE

17.    Plaintiff began working for WINCO in December 1994 as a Cart Clerk.  Plaintiff worked in that position for seven months before becoming a Pizza Clerk and, later, a Grocery Clerk.  WINCO eventually promoted Plaintiff to Lead Clerk, a position that he held for a few years.

18.    In January 2006, Plaintiff became the Second Assistant Manager at the Orangevale Store. Over the next six years, he served as an Assistant Manager at the Antelope, Elk Grove and Roseville stores.

19.    In June 2012, WINCO promoted Plaintiff to the position of Manager at its Brentwood location.  The Brentwood store was struggling and in poor condition.  However, under Plaintiff's management, the Brentwood store experienced one of the highest increases in sales in Northern California.  The store also ranked number two in yearly secret shopper reports.

20.    In 2015, Mike Kneller, WINCO's Regional Vice President, asked Plaintiff to transfer to the Pittsburg store.  That store was known for being a difficult work environment.  Plaintiff reluctantly agreed to the transfer because he felt like he owed it to Mr. Kneller.

21.    Plaintiff worked hard to improve the Pittsburg store, and, again, achieved significant results.  Among other things, sales at the Pittsburg store increased dramatically.

22.    However, Plaintiff experienced firsthand why the Pittsburg store had a bad reputation. Specifically, Plaintiff was threatened and assaulted while at work at that store.  Two customers punched Plaintiff in the face.  Two customers also threatened to stab him.  There were many more instances of violence or threatened violence, most of which Plaintiff reported to his superiors.  The atmosphere in the store was toxic, and Plaintiff feared for his safety.

23.     By the end of 2017, working at the Pittsburg store had taken an enormous toll on Plaintiff. He became depressed and anxious. For the first time in Plaintiff's life he began to think about harming himself.

24.     On January 9, 2018, WINCO's Vice President Nancy Lebold visited the Pittsburg store. The store sold $20,000 over projections that day and was very busy. Nevertheless, Ms. Lebold gave Plaintiff a written warning because of the store's condition. That was the first writeup that Plaintiff had received in his 24-year tenure with WINCO.

25.     During the rest of 2018, Plaintiff redoubled his efforts and made great improvements to the Pittsburg store. That was challenging because employee turnover was high and the environment continued to be dangerous. This situation exacerbated Plaintiff's mental health issues. In addition, Plaintiff developed kidney stones due to dehydration.

26.     Throughout 2018 Plaintiff rarely took bathroom or meal breaks or vacation time.

27.     By the end of 2018 Plaintiff was suffering from severe depression and anxiety. He could not sleep at night, stopped shaving and gained weight. Despite the clear indications that Plaintiff's health was deteriorating, no one at WINCO inquired about his well-being or made Plaintiff aware of his rights to take leave.

28.     Nevertheless, the Pittsburg store had improved to the point that Plaintiff received no further verbal or written warnings while at that store.

29.     Plaintiff began to suffer from suicidal ideation toward the end of 2018. In December 2018, when his symptoms got worse, he wrote a letter to Ms. Lebold, Mr. Miller, and WINCO's Regional HR Director Joann Pingree detailing his depression and asking for a transfer to Nevada.

30.     Darrin Fast, a WINCO Store Manager in Reno, retired and his management position opened up. However, WINCO did not offer Plaintiff that position.

31.     Shortly after Plaintiff sent his letter, Ms. Pingree reached out to Plaintiff. She helped him file a workers' compensation claim based on his depression. Ms. Pingree informed Plaintiff that his

1   workers' compensation claim would likely be denied, but that WINCO would pay for six counseling

2   sessions.

3       32.     Just before Christmas 2018, Mr. Miller talked to Plaintiff about transferring to the

4   Vacaville store.  Plaintiff was concerned about moving to that store because many managers had been

5   terminated while working there.  The Vacaville store was viewed as the place WINCO sent employees it

6   wanted to terminate.  Ultimately, though, Plaintiff accepted the transfer because he was desperate to

7   leave the Pittsburg store.

8       33.     Prior to Plaintiff's transfer, Regional Produce Supervisor Michael Seashore commended

9   Plaintiff for turning around the Pittsburg store and stated that Pittsburg was no longer a concern for him.

10  He also told Plaintiff that Vacaville was his worst department.

11      34.     Plaintiff began working at the Vacaville store in mid-January 2019.  The store was in a

12  shambles. Many of the lights were out and store was dim.  The floors were filthy and had not been

13  waxed.  Countless repairs were needed.  Plaintiff took immediate steps to bring the Vacaville store up to

14  WINCO's standards.  A short time later, Mr. Seashore praised Plaintiff for turning around the Vacaville

15  Produce Department.

16      35.     On March 17, 2019, Jordan Esterman, the son of wine buyer Mark Esterman, came to the

17  Vacaville store.  He took pictures of the Produce Department and sent them to Ms. Lebold.  Mr.

18  Esterman returned to the store on March 24, 2019, and took more pictures of the Produce Department.

19  Again, Mr. Esterman sent these photos to Ms. Lebold.

20      36.     Plaintiff was scheduled to be off and was not at the store on those days.

21      37.     On March 26, 2019, Mr. Miller visited the Vacaville store.  He informed Plaintiff that the

22  Produce Department was not up to WINCO standards.  After that visit, Plaintiff spoke with Ms. Pingree,

23  who reassured Plaintiff that he would not be disciplined.  Plaintiff promised Ms. Pingree that he would

24  improve the store's conditions.

25

38.     In March 2019 Plaintiff began attending counseling sessions with Carolyn Fowle, Ph.D. Plaintiff informed Mr. Miller and Ms. Lebold whenever he attended counseling sessions.  On April 4, 2019, while Plaintiff was at a counseling session, Mr. Miller called Plaintiff to ask about his whereabouts. Plaintiff told him that he was at counseling and that notice had been provided to WINCO.

39.     On April 9, 2019, Mr. Miller and Ms. Pingree came to the Vacaville store and suspended Plaintiff, allegedly due to the condition of the store on March 26, 2019.  Plaintiff was shocked because Ms. Pingree had assured Plaintiff that he would not be disciplined.

40.     WINCO suspended Plaintiff from April 10 through April 16, 2019.  Because he was suspended, Plaintiff was unable to prepare the employee schedule for the upcoming Easter week. Plaintiff returned to work on Wednesday, April 17, 2019.

41.     On Saturday, April 20, 2019, the day before Easter, two Assistant Managers were out and several employees had called in sick.  The store was very busy. Mr. Miller visited the store that day.  As he was leaving the store, Mr. Miller casually mentioned to Plaintiff that he should get some help in the Produce Department.

42.     On April 26, 2019, Plaintiff went to see another psychologist, Michael Fernandez, Psy. D., for treatment.  Dr. Fernandez took Plaintiff off work from April 26 through May 10, 2019, because Plaintiff's depression was worsening.  That same day, Plaintiff emailed Ms. Pingree his doctor's note. Plaintiff also informed WINCO that he would be completing FMLA-related paperwork.

43.     WINCO failed to provide Plaintiff with notice about his eligibility, rights, responsibilities, and entitlements under the FMLA.

44.     On May 1, 2019, Plaintiff began to fill out his FMLA paperwork. On May 2, 2019, Plaintiff met with Dr. Fowle.  She informed Plaintiff that his workers' compensation claim had been denied and that she could no longer treat him.

45.     Plaintiff returned to work on May 13, 2019.  WINCO terminated him on that day, citing the condition of the Vacaville store on April 20, 2019.

46.     On May 17, 2019, the employees of the Vacaville store wrote a letter to WINCO. The employees praised the hard work and progress that Plaintiff had achieved at the store, and raised concerns about his termination.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**DISABILITY DISCRIMINATION**
**(Government Code § 12940)**
**(Against all Defendants)**

47.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

48.     Plaintiff is and was disabled, and is thus a member of a class of persons protected by the FEHA from employment discrimination on the basis of disability.  Plaintiff was disabled under California Government Code section 12926.1(b).  Plaintiff suffered from depression, anxiety, suicidal ideation, and kidney stones which limited his major life activities, including working.

49.     WINCO knew that Plaintiff suffered from depression, anxiety, suicidal ideation, and kidney stones.

50.     Plaintiff was able to perform the essential job duties with reasonable accommodation for his disabilities.

51.     WINCO transferred Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion.  WINCO then suspended and terminated Plaintiff.

52.     Plaintiff's disabilities were substantial motivating factors in WINCO's decision to transfer Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion, and to suspend and terminate Plaintiff.

53.     Plaintiff was harmed when WINCO discriminated against him on the basis of his disabilities.

54.     WINCO's conduct was a substantial factor in causing Plaintiff's harm.

55.     WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that WINCO discriminated against Plaintiff on the basis of his disability.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

56.     As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

## SECOND CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION
#### (Government Code § 12940)
#### (Against all Defendants)

57.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

58.     California Government Code section 12940(m) provides that it is unlawful for any employer to fail to make reasonable accommodation for the known disability of an employee.

59.     Plaintiff was an employee of WINCO.

60.     Plaintiff had disabilities which substantially limited the following major life activities: working.  WINCO knew of Plaintiff's disabilities.

61.     Plaintiff was able to perform the essential job duties of his position with reasonable accommodation.

62.     WINCO failed to meet its duty to provide reasonable accommodations for Plaintiff's known disabilities and instead transferred Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion, and suspended and terminated Plaintiff.

63.     Plaintiff was harmed by WINCO's failure to reasonably accommodate his disabilities.

64.     WINCO's failure to provide reasonable accommodations was a substantial factor in causing Plaintiff's harm.

65.     WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that WINCO failed to provide Plaintiff with reasonable accommodations.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

66.     As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

<u>THIRD CAUSE OF ACTION</u>
**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**
**(Government Code § 12940)**
**(Against all Defendants)**

67.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

68.     California Government Code section 12940(n) provides that it is unlawful for any employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

69.     WINCO knew that Plaintiff had disabilities which substantially limited the following major life activities: working.

70.     Plaintiff requested that WINCO make reasonable accommodations for his disabilities so that he would be able to perform his essential job requirements.

71.     Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodations could be made so that he would be able to perform his essential job requirements.

72.     WINCO failed to engage in a timely, good faith, interactive process with Plaintiff to

determine effective reasonable accommodations for his known disabilities, and instead transferred Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion and suspended and terminated Plaintiff's employment.

73. As a result of WINCO's failure to engage in the interactive process, Plaintiff was harmed.

74. WINCO's failure to engage in the interactive process was a substantial factor in causing Plaintiff's harm.

75. WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that WINCO failed to engage in the interactive process.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

76. As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

## FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF THE FEHA
### (Government Code § 12940(h))
### (Against all Defendants)

77. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

78. California Government Code section 12940(h) provides that it is unlawful for any employer or covered entity to retaliate against an employee for engaging in a protected activity.

79. Plaintiff engaged in protected activity when he requested reasonable accommodations.

80. WINCO transferred Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion, and suspended and terminated Plaintiff.

81.     Plaintiff's requests for an accommodation were a substantial motivating reason for WINCO's decision to transfer Plaintiff to a problematic store in order to impair Plaintiff's job performance and prospects for advancement and promotion, and suspend and terminate Plaintiff.

82.     Plaintiff was harmed.

83.     WINCO's conduct was a substantial factor in causing Plaintiff's harm.

84.     WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that WINCO retaliated against Plaintiff.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

85.     As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

### FIFTH CAUSE OF ACTION
**Failure to Prevent Harassment, Discrimination & Retaliation
in Violation of Gov't Code § 12940
(Against all Defendants)**

86.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

87.     California Government Code section 12940(k) provides that it shall be unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.

88.     Plaintiff was employed by WINCO.

89.     Plaintiff was subjected to discriminatory, and retaliatory conduct because of his protected status as a disabled individual.

90.     WINCO knew or should have known of the discriminatory and retaliatory conduct, and failed to take all reasonable steps necessary to prevent the discrimination and retaliation from occurring.

91.     Plaintiff was harmed.

92.     WINCO's failure to take reasonable steps to prevent discrimination and retaliation was a substantial factor in causing Plaintiff's harm.

93.     WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that WINCO failed to prevent discrimination, harassment, and retaliation.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

94.     As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

## SIXTH CAUSE OF ACTION
### FMLA INTERFERENCE
### (29  USC § 2601 *et seq.*)
### (Against all Defendants)

95.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

96.     WINCO is an employer under the FMLA.

97.     Plaintiff asked WINCO to take FMLA leave.

98.     In 2017, 2018, and 2019, Plaintiff had worked for WINCO for over a year, and for more than 1,250 hours, and was entitled to take FMLA leave.

99.     Plaintiff was entitled to take FMLA leave because of his health conditions.

100.    Plaintiff provided WINCO with appropriate notice.

101.    WINCO interfered with, restrained, and/or denied Plaintiff's entitlements to rights under the FMLA by denying Plaintiff FMLA leave; retaliating against Plaintiff for requesting FMLA leave; using Plaintiff's request for FMLA leave as a negative factor in the decision to terminate Plaintiff; discouraging Plaintiff from using FMLA leave; suspending Plaintiff; and/or terminating Plaintiff.

102.    Plaintiff was harmed when WINCO interfered with, restrained, and/or denied Plaintiff's rights under the FMLA.

103.    WINCO committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FMLA.  Thus, Plaintiff is entitled to recover punitive damages from WINCO.

104.    As a proximate result of the acts of WINCO, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against WINCO as set forth below.

## DAMAGES

105.    As a proximate result of the conduct of WINCO, Plaintiff has suffered and continues to suffer economic loss.

106.    As a further proximate result of the conduct of WINCO, Plaintiff has suffered emotional and mental distress, fear, anxiety, humiliation and embarrassment.

107.    Plaintiff was required to retain private counsel to vindicate his rights under law.  Plaintiff is therefore entitled to an award of all attorneys' fees incurred in relation to this action for violation of his civil rights.

WHEREFORE, Plaintiff requests relief from WINCO as follows:

1.    For compensatory damages for lost past and future wages, earnings, and benefits, according to proof;

2.    For general damages for humiliation, mental anguish and emotional distress, according to proof;

3.    For consequential damages, according to proof;

4.    For reasonable attorneys' fees, according to proof;

5.    For reasonable costs, according to proof;

1       6.      For interest;

2       7.      For such other and further relief as the Court may deem just and proper.

3

4    Dated:  September 12, 2019                    HUNTER PYLE LAW

5

6                                                  By: /s/ Tanya Tambling
                                                       Tanya Tambling

7
                                                   Attorneys for Plaintiff
8                                                  JASON LOPEZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---
*LOPEZ V. WINCO HOLDINGS, INC. ET AL.*
**COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a jury trial.

3

4

Dated:  September 12, 2019                              HUNTER PYLE LAW

5

6

7                                                        By: /s/ Tanya Tambling_____
                                                             Tanya Tambling

8                                                        Attorneys for Plaintiff
                                                         JASON LOPEZ
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-16-
*LOPEZ V. WINCO HOLDINGS, INC. ET AL.*
**COMPLAINT**